## DAVIES ET AL. ADM., V. HUNT.

1. LANDS—REAL ESTATE BANK : *Redemption of, from State.*
   Under the Act of December 15, 1875, only owners of the equity of redemption in the Real Estate Bank lands sold to the State, can redeem them from the State.

2. REAL ESTATE BANK : *History of, etc., within judicial cognizance.*
   All matters connected with the organization, history and dissolution of the Real Estate Bank are within judicial cognizance.

Davies et al., Adm. v. Hunt

APPEAL from *Chicot* Circuit Court in Chancery. Hon. T. F. SORRELLS, Circuit Judge.

*U. M. & G. B. Rose*, for appellants,

The amended answer, stating a substantial ground of defense, is not demurrable. Plaintiff should have moved to make it more definite and certain. *C. & F. R. R.* v. *Parks*, 32 *Ark.*, 131; *Ball* v. *Fulton Co.*, 31 *Ib.*, 379; *Busby* v. *Reynolds*, *Ib.*, 662; *Hoback* v. *Hoback*, 33 *Ib.*, 405.

Appellants purchased the land under *Sections* 3959 *to* 3961, *Gantt's Digest*, amended by *Acts of* 1874–5, *p.* 219, and *Acts of* 1875, *p.* 179. *Prima facie* their title was valid. *Omnia presumuntur rite et solemniter esse acta*.

Gaines claimed adversely to Smith, and had a right to purchase the superior outstanding title, and set it up in defense of the suit.

This court will take judicial cognizance, as a matter of public history, that the mortgage to the Real Estate Bank was prior to the one under which appellee claims.

*Mark Valentine*, for appellee:

The answer of appellants was defective and demurrable. In it they claim the benefit of the Act of December 15, 1875—*Acts of* 1875, *p.* 179—and set up their deed; but they do not state that they were the *owners of the equity of redemption* in the lands, when they received the deed, or when the lands were purchased by the State. They could not so state, because this court, in 33 *Ark.*, 267, decided that appellee was the owner of such equity; and he, alone, had the right to purchase from the State, under *Sec.* 3946, *Gantt's Digest*, and the Act of December 15, 1875, *supra*.

Appellants, at the utmost, (Gaines having redeemed

appellee's land·from the State, as an outsider,) acquired only a right to reimbursement for money paid out in our behalf.

EAKIN, J.    After this cause was remanded, under the opinion of this court, in 33 *Ark.*, 267, administrations, original and *de bonis non*, having been, since the appeal, granted on the estate of Abner L. Gaines—the appellants appeared in the Circuit Court, and were allowed to file an amended answer, showing:

That, on the nineteenth of July, 1877, and during the pendency of the appeal here, the original administrator of Gaines redeemed from the State of Arkansas a portion of the lands included in the deed of trust, or second mortgage; to-wit, the east half, and northwest quarter of section thirty-four, in township fifteen south, range one west.

They allege that the redemption was made under an Act of the General Assembly, approved December 15, 1875, " To regulate the sale of lands belonging to the State, in certain cases ;" and that he received from the Commissioner of State Lands a certificate of said redemption, upon which the appellants, as administrators *de bonis non*, afterwards— on the nineteenth of August, 1879—obtained a deed from the Governor, which·they file as part of their answer.

They say, the purchase money of said lands has been fully paid, and claim that the title, so acquired, vests in the estate a good and valid title to said land—clear of all incum- brances whatever.    They pray that those lands, also, may be decreed to them, as well as those embraced in the first. lien against Smith and Adams, and for general relief.

The deed exhibited has for its caption, " Redemption Deed for Real Estate Bank Lands," and recites that it was executed upon the certificate of the State Land Commis- sioner, under said Act ; that the purchase money had been

paid, on account of lands mortgaged to the Real Estate Bank. It included many tracts besides the one in question, being for nearly 3,000 acres; and states the purchase money of the whole together, to be $1,570.40.

To this answer a general demurrer was sustained, and, declining to amend, the respondents appealed. The court then proceeded to decree a foreclosure of the deed of trust as to all the lands in the original bill not embraced in the first lien.

The decree, however, recites that, it appears, the defendants, as administrators, had expended funds of the estate in redeeming said lands from the State of Arkansas, which sum is a charge upon the said lands, and orders that the same be repaid, with six per cent. interest from the time of its expenditure.

A like recital and order is made with regard to taxes upon the lands, paid by defendants.

The decree further recites that the lands had been in possession of the said Abner L. in his lifetime, and of his legal representatives since.

The Master was directed to determine the amounts paid for such redemption, and upon such taxes, the time, kind of funds, etc., their actual value, etc., and, further, to ascertain the fair rental value of the said premises, whilst so in possession of said Abner L. and his legal representatives.

The Act of December 15, 1875, under which the purchase was claimed was passed wholly for the benefit of the owners of the equity of redemption, and one must have been such owner in order to be competent to avail himself of its privileges. What is meant in this State by the equity of redemption in Real Estate Bank Lands is well undesrtood by our courts and people. Indeed all matters connected with the organization, history and dissolution of the Real Estate Bank, have been so much discussed, and made so much the sub-

1. REAL ESTATE BANK LANDS: Redemption of, from State

2. History of, within judicial cognizance.

37—37

ject of Legislation, and judicial controversy, as to come within the proper range of judicial cognizance. It is historical. The court knows that the State claims for her indemnity the benefit of mortgages executed to the Bank, and that all these mortgages are of date long anterior to any of the liens now under discussion. She has, for her convenience, her special fiscal court for their foreclosure, and all lands purchased in by her under such foreclosure, would, but for her own grace, vest in her, clear of all subsequent liens, and would pass, thus unincumbered, to her next grantees. There were laws in existence providing for their resale, when the Act in question was passed out of tenderness to the owners of the equity of redemption, or those who would have been such but for the foreclosure. It gave those who were such at the time of the purchase by the State, ninety days after a certain period, to come in and redeem, and meanwhile the sales were suspended. It fixed also, liberal terms of redemption.

The particular lands in the answer were, as appears by the transcript of the cause remaining here, a part of those included in the second lien or trust deed, under which plaintiff claims, and also a part of those purchased by Gaines under the judgment in attachment. It is the law of this case (see *former opinion*) that the attachment lien was junior to that of the trust deed; and the real ownership of the equity of redemption was in the trustees, for the purposes of the trust. There was also a secondary or subordinate ownership in the estate of Gaines which will sustain the purchase from the State, and entitle the administrators to be repaid advances for the exoneration of the property, but they stood in such relation to the superior owners of the equity, as would not allow them to purchase to their exclusion. Evidently Smith could not have done so, and the estate of Gaines, as to this special tract, cannot take greater rights than Smith had.

Davies et al., Adm., v. Hunt.

The answer was also, in effect and purpose, a cross complaint praying general relief. It sought on the facts stated, to have the title of the estate to the lands, vested and confirmed against all parties. In so far, it was bad. But it brought matter to the court, which entitled defendants to appropriate relief under the general prayer, which would be reimbursement out of the property, for such moneys as it had been necessary to use in the redemption of this particular tract, or the cash value of scrips and bonds, with six per cent. interest. The demurrer was general and should have been overruled. The answer might have been made more specific as to amount advanced for this tract.

The error in sustaining it was, however, merely formal. The decree recognizes the rights of defendants, as above indicated, to their full extent, and the directions to the Master contemplate their determination and enforcement. If this be done, there will be no injury, and in the view of the case we take, this appeal seems to have become unnecessary, after the decree. The proceedings of the court will not at this stage be interrupted.

I observe an account ordered as to rents and profits. For what purpose his honor, the Chancellor, desires to be informed as to these, by the Master, is not quite obvious, but they may, as to some of the lands, be necessary. The court will not anticipate his action, but it may not be amiss to say, obiter, that neither a mortgagor in possession, nor his assignee is reliable for rents and profits before foreclosure, or possession taken by the mortgagee or trustee. If the corpus of the property be an insufficient security, the mortgagee may have a receiver. On the other hand, it is the duty of the mortgagor or those claiming under him to keep down current taxes, without reimbursement. Those, however, who claim under the mortgagor and who are not the debtors, may be reimbursed out of the property for all sums advanced

to exonerate it from liens superior to those of all parties: whether arising from past due taxes or otherwise.

Affirm the decree and remand the cause for further proceedings in accordance with this opinion, and the principles- and practice in equity.